UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

**SHANE SCOFIELD,** individually and on behalf of all others similarly situated,

    Plaintiff,

v.

**ALLEVIATE TAX LLC**, a California Limited Liability Company,

    Defendant.
_____/

Case No. 1:24-cv-3231

## **DEFENDANT ALLEVIATE TAX LLC'S RULE 12(b)(6) MOTION TO DISMISS**

Defendant Alleviate Tax LLC ("Alleviate") respectfully moves this Court to dismiss Plaintiff Shane Scofield's ("Plaintiff") Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and based upon the following Memorandum of Law.

1

## MEMORANDUM OF LAW

### I. INTRODUCTION

Plaintiff fails to establish any clear connection between Alleviate and the alleged violation, and as such, his Complaint fails to state a valid claim under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227(b)(1)(A), and 47 C.F.R. § 64.1200(a)(1).

First, Plaintiff's Complaint cannot be sustained on a theory of direct liability—it is devoid of any facts that plausibly allege that Alleviate "made" or "initiate[d]" these calls on its own behalf, as required by law. 47 U.S.C. § 227(b)(1)(A); 47 C.F.R. § 64.1200(a)(1). The prerecorded message Plaintiff claims to have received does not mention Alleviate and Plaintiff never indicates that Alleviate owned the phone number that made the call.

Second, theories of vicarious liability also fail. Since Plaintiff does not allege that an agent placed the call that he received, he cannot establish the existence of an agency relationship. And even if he did – which he did not – actual and apparent authority are found through the "manifestations" of the principal, and Plaintiff does not allege that Alleviate had any sort of contact with such an agent. Lastly, because there is no indication that Alleviate knew or should have known about the allegedly violative call, Alleviate could not have ratified it. As such, a vicarious liability theory also fails.

Since Plaintiff's Complaint cannot be sustained on either a direct or vicarious theory of liability, it must be dismissed.

### II. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that his cell phone number, (970)-XXX-XXXX, was listed on the DNCR for over a year before the calls at issue and that he has never done business with or consented to

2

receive calls from Alleviate. Compl. at ¶¶ 17-21, ECF No. 1.

Despite this, Plaintiff allegedly received a single call on February 15, 2024, at 11:03 AM from the caller ID 706-998-5526. *Id.* at ¶ 22. Plaintiff claims that he did not answer and instead received a voicemail containing the following prerecorded message:

> This is an important update from the Tax Relief Centre. According to our records, you may still have an existing state or federal tax balance that needs to be addressed. The new 2024 Advantage Tax Relief Fund is now available to small businesses like yourself. The Advantage Tax Relief Program is designed to reduce your tax debt by up to 100 percent, and it simply requires a brief five-to-ten-minute phone consultation. There is no personal information required, but the funding for this program is only expected to be available through the end of this month. It is imperative that you call today to secure your position and determine your eligibility. Call us back now at 888-355-2972 and ask to speak with one of our certified tax relief specialists. Again, that number is 888-355-2972.

*Id.* at ¶ 23. Plaintiff says he knew that the call was prerecorded because (a) it was scripted, (b) it used a generic, monotone, robotic voice, (c) was likely generated using a computer text-to-speech program, and (d) that according to the app RoboKiller, other callers received the same prerecorded message from the same phone number. *Id.* at ¶¶ 24-25.

To identify the caller, Plaintiff allegedly dialed the callback number 888-355-2971. *Id.* at ¶ 26. When he called, Plaintiff states that a man answered, asked if he was interested in tax assistance services, and identified his company as Alleviate. *Id.* at ¶ 27.

### III. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 8(a)(2) provides that to survive a motion to dismiss, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has further clarified this pleading standard, stating that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

3

*Twombly*, 550 U.S. 544, 570 (2007)). Indeed, a plausible complaint must do more than offer mere "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Twombly*, 550 U.S. at 556-57) (first two alterations added).

To determine whether a plaintiff's complaint meets this threshold, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Then, the court should assume the truth of the plaintiff's non-conclusory, factual allegations and determine whether the plaintiff "nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 547; *Ashcroft*, 556 U.S. at 679.

### IV.   PLAINTIFF'S COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFF FAILS TO ESTABLISH THAT ALLEVIATE IS DIRECTLY OR VICARIOUSLY LIABLE.

The TCPA's prerecorded call provisions require the defendant "to make" or "initiate" the calls at issue. *See* 47 U.S.C. § 227(b)(1)(A) (declaring it "unlawful for any person … ***to make*** any call … using … an artificial or prerecorded voice[.]") (alterations added) (emphasis added); 47 C.F.R. § 64.1200(a)(1) (stating that "[n]o person or entity may … ***initiate*** any telephone call … using … an artificial or prerecorded voice[.]") (alterations added) (emphasis added). The requirement of making or initiating the call may be satisfied by plausibly alleging that the defendant is either directly or vicariously liable. *2013 FCC Ruling*, 28 FCC Rcd. at 6582 ("[A] seller is not directly liable for a violation of the TCPA unless it initiates a call, but may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer."). As explained below, Plaintiff's allegations fall short.

4

### A. Plaintiff Fails to Establish That Alleviate Directly Made the Calls at Issue.

Direct liability attaches when "a person or entity 'initiates' a telephone call"—i.e., "when it takes the steps necessary to physically place a telephone call." *Id.* at 6583. The 2013 FCC Ruling draws a distinction between "the telemarketer who initiates a call and the seller on whose behalf a call is made." *Id.* at 6582. Indeed, only the telemarketer who initiates the call is subject to direct liability. *Id.* at 6583. Sellers typically do not initiate calls—they engage telemarketers to do so on their behalf. *Id.* Therefore, they are generally not directly liable unless they initiate calls on their own behalf. *Id. See Childress v. Liberty Mut. Ins. Co.*, No. 17-CV-1051, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018) ("The plain language of the TCPA assigns civil liability to the party who 'makes' a call" and '[d]irect liability is inapplicable here as the parties do not dispute that the actual sender of the text was …a separate provider of text-message based services[.]") (quoting *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678 (9th Cir. 2014)) (final alteration added).

To survive a motion to dismiss on a direct liability theory, a plaintiff must allege that the defendant "made a call and provide some factual basis" indicating that the defendant owned the number that called the plaintiff. *Cunningham v. Pro. Educ. Inst., Inc.*, No. 4:17-CV-00894-ALM-CAN, 2018 WL 6709515, at *3 (E.D. Tex. Nov. 5, 2018); *see Forteza v. Pelican Inv. Holdings Grp.*, LLC, No. 4:23-cv-401-ALM-KPJ, 2023 WL 9199001, at *1, *5 (E.D. Tex. Dec. 27, 2023) (finding the plaintiff's allegations sufficient to support direct liability where plaintiff stated that defendant directly made at least one call and followed up with a contract identifying the defendant as the "seller"); *Williamson v. Irving K Motor Co. LLC*, No. 3:21-CV-1599-L-BH, 2022 WL 2053179, at *7 (N.D. Tex. June 7, 2022) (finding direct liability sufficiently alleged where plaintiff

5

claimed to have received prerecorded calls from the defendant promoting its products and services, listed four phone numbers that were used to contact her, information connecting the defendant to the phone numbers, and the contents of the messages); *Martin v. Bottom Line Concepts, LLC*, 723 F. Supp. 3d 270, 282-83 (S.D.N.Y. 2024) (finding direct liability where plaintiff called the phone number from which she received an artificial call and a message played identifying defendant's trade name); *Bank v. CreditGuard of Am.*, No. 18 Civ. 1311, 2019 WL 1316966, at *8 (E.D.N.Y. Mar. 22, 2019) (finding direct liability where complaint stated that plaintiff spoke to an agent at the same phone number from which the robocall originated and who was from one of defendant's entities.).

Here, however, Plaintiff fails to sufficiently connect the alleged prerecorded call to Alleviate in order to establish direct liability. Indeed, the prerecorded message Plaintiff received does not explicitly identify Alleviate—it states that it is "from the Tax Relief Centre." Compl. at ¶ 23, ECF No. 1. Alleviate is not the only company that provides tax relief services and cannot be held liable for any call that mentions tax relief. Even more, Plaintiff does not allege that Tax Relief Centre is an alias of Alleviate, or allege any facts that suggest that Tax Relief Centre and Alleviate Tax are the same entity. And although Plaintiff dialed the callback number identified in the prerecorded message, this number is ***different*** than the number from which he received the prerecorded message. *Id.* at ¶¶ 26-27. As such, Plaintiff's conclusory allegation is that he received a prerecorded message that offered one of Alleviate's telephone numbers as a callback number. This is entirely distinct from the cases above in which the plaintiffs claimed to have identified the defendant by dialing the phone numbers from which they received the calls. Simply put, that is not enough to establish a direct liability theory, thereby warranting dismissal.

6

    **B.**    **Plaintiff Fails to Establish That Alleviate Is Vicariously Liable for the Call at Issue.**

        **1.**    **Plaintiff Fails to Establish That Alleviate Is Vicariously Liable Through Actual Authority.**

Alternatively, to establish that a defendant is vicariously liable for calls made on its behalf, a plaintiff must plead the existence of an agency relationship. *Klassen v. Solid Quote LLC*, 702 F. Supp. 3d 1052, 1058 (D. Colo. 2023); *2013 FCC Ruling*, 28 FCC Rcd. at 6584 ("[T]he seller may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers."). An agent is found to have acted with actual authority if he "reasonably believe[d], in accordance with the principal's manifestations to the agent, that the principal wishe[d] the agent so to act." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1251 (10th Cir. 2013) (internal citation omitted) (alterations added). Accordingly, "[a]ctual authority stems from a principal's expressions to an agent." *Escano v. Symmetry Fin. Grp. Of North Carolina, LLC*, No. 2:21-cv-0884, 2022 WL 2072875, at *6 (D.N.M. June 9, 2022) (quoting *Mohon v. Agentra LLC*, 400 F. Supp. 3d 1189, 1235 (D.N.M. 2019)). See *Escano v. Ins. Supermarket Inc.*, No. 2:23-cv-0793, 2023 WL 9023273, at *6 (D.N.M. Dec. 29, 2023) ("In *Abramson v. Agentra, LLC*, for example, the court found that the plaintiff's claims of vicarious liability, based on a theory actual authority, survived a motion to dismiss where the plaintiff pled that the defendant 'outsource[d] its telemarketing and authorize[d] those third-parties to enter into contracts on its behalf.'") (quoting *Abramson*, No. CV 18-615, 2018 WL 6617819, at *4 (W.D. Pa. Dec. 18, 2018)); *Symmetry*, 2022 WL 2072875, at *6 (finding actual authority where the complaint alleged that the "MOIC authorized SFG salespersons to represent themselves as agents of [defendant] to potential customers and to sell MOIC's insurance plans via telephone on its

7

behalf; published marketing material which states that SFG salespersons are agents of MOIC; and paid SFG sales commissions for the insurance enrollments produced by SFG.") (cleaned up).

Here, however, the prerecorded message Plaintiff claims to have received does not indicate that it was made or initiated by an agent of Alleviate. *See* Compl. at ¶ 23, ECF No. 1. In fact, it does not identify Alleviate at all, let alone the name of an agent. *See id.* And while the callback number Plaintiff dialed allegedly led him to a man associated with Alleviate, Plaintiff does not allege that the number from which he received the prerecorded call came from an agent of Alleviate. Finally, Plaintiff does not allege that Alleviate possessed or asserted any level of control over the maker of the call at issue. As such, Plaintiff's claims cannot succeed on a basis of actual authority.

### 2. Plaintiff Fails to Establish That Alleviate Is Vicariously Liable Through Apparent Authority.

Next, apparent authority "holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal." *2013 FCC Ruling*, 28 FCC Rcd. at 6586; *see Declements v. RE/MAX LLC*, No. 1:20-cv-02075, 2020 WL 9259326, at *4 (D. Colo. Oct. 13, 2020) ("There are no such manifestations alleged in the complaint. There are, for example, no allegations that RE/MAX ever communicated to Plaintiff or represented that its franchisees' agents were acting on behalf of RE/MAX."). In the 2013 FCC Ruling, the FCC provided the following examples of evidence supporting the existence of apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter

8

> consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.

28 FCC Rcd. at 6592.

Plaintiff's Complaint evidences none of the FCC's examples. It neglects to mention that the call at issue was made by an agent, let alone any words or conduct by Alleviate to support its apparent authority of the agent. Simply put, this ends the inquiry—Plaintiff's Complaint cannot be sustained on a theory of apparent authority.

### 3. Plaintiff Fails to Plead Facts Establishing That Alleviate Ratified the Alleged Calls.

Finally, the agency theory of ratification provides that a seller or principal may also be liable "if it ratifies th[e] acts [of another] by knowingly accepting their benefits." *2013 FCC Ruling*, 28 FCC Rcd. at 6587. On this theory, 2013 FCC Order specifically states that

> a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd. at 6592.

Plaintiff's Complaint cannot support a theory of ratification. Plaintiff does not allege that the call was made by an agent of Alleviate, any information indicating that Alleviate knew or should have known that the agent made an illegal call, or that Alleviate thereafter impliedly accepted the benefits of the agent's actions. As such, Alleviate cannot be held liable through ratification.

## V. CONCLUSION

For the foregoing reasons, Alleviate respectfully requests this Court dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: February 4, 2025

                                       TROUTMAN AMIN, LLP

                                       */s/ Jenniffer Cabrera*
                                       Jenniffer Cabrera (FBN 1034545)
                                       1825 NW Corporate Blvd, Ste. 100
                                       Boca Raton, Florida 33431
                                       400 Spectrum Center Dr., Ste. 1550
                                       Irvine, California 92618
                                       Telephone: 561-834-0883
                                       jenniffer@troutmanamin.com
                                       *Counsel for Defendant Alleviate Tax LLC*

## **CERTIFICATION**

I hereby certify that on February 4, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by e-mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Jenniffer Cabrera*
Jenniffer Cabrera