UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

SHANE SCOFIELD,                               Case No. 1:24-CV-3231

     Plaintiff,
v.

ALLEVIATE TAX LLC,

     Defendant.
_____/

**Plaintiff's Response in Opposition To Defendant's Motion To Strike Class Allegations**

### I.  Introduction

Defendant Alleviate Tax LLC's ("Alleviate Tax" or "Defendant") improper motion to strike class claims must be denied both procedurally, because Defendant has failed to follow Rule 12(g)(6), and on the merits, because the Plaintiff's proposed class definition is by no means overly broad. Moreover, the class, alleging illegal calling conduct arising out of an automated calling campaign, is the hallmark of commonality, as courts have held with respect to similar TCPA class actions. Multiple courts across the country have rejected identical arguments to here that a class like the one proposed here should be stricken because they are allegedly uncertifiable. Defendant's motion should therefore be denied in its entirety.

### I.  FACTUAL BACKGROUND

As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone

1

Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

Plaintiff alleges as follows: Plaintiff's telephone number (the "Number"), (970)-XXX-XXXX, is a cellular telephone number on the National Do Not Call Registry. *See* ECF No. 1 at ¶ 17. Mr. Scofield uses the number for personal, residential, and household reasons. *Id.* at ¶ 18. The number is not associated with any business. *Id.* at ¶ 19. The Plaintiff never consented to receive telemarketing calls from the Defendant. *Id.* at ¶ 20. The Plaintiff never did any business with the Defendant prior to the calls at issue. *Id.* at ¶ 21. Despite that, on February 15, 2024 the Plaintiff got a pre-recorded call that stated:

> This is an important update from the Tax Relief Centre. According to our records, you may still have an existing state or federal tax balance that needs to be addressed. The new 2024 Advantage Tax Relief Fund is now available to small businesses like yourself. The Advantage Tax Relief Program is designed to reduce your tax debt by up to 100 percent, and it simply requires a brief five-to-ten-minute phone consultation. There is no personal information required, but the funding for this program is only expected to be available through the end of this month. It is imperative that you call today to secure your position and determine your eligibility. Call us back now at 888-355-2972 and ask to speak with one of our certified tax relief specialists. Again, that number is 888-355-2972.

*Id.* at ¶ 22-23. Indeed, the app RoboKiller identified other users who received the same exact pre-recorded message from the same exact phone number at the time. *(706) 998-5526 – RoboKiller Lookup*, ROBOKILLER. *Id. at ¶ 25*. Plaintiff called the 888-355-2972 number he was provided on the message to identify the identity of the caller who was calling him illegally and for no other reason. *Id.* at ¶ 26. When the Plaintiff called the number, a male answered the line and asked if the Plaintiff was interested in tax assistance services, this individual eventually identified his company as Alleviate Tax. *Id.* at ¶ 27.

Due to the *en masse* nature of calling campaign, the Plaintiff has filed this matter as a putative class action on behalf of the following class of individuals:

> TCPA Robocall Class: All persons within the United States: (1) to whose cellular telephone number, specialized mobile radio number, other radio common carrier number, or any service for which the called party is charged for the call, (2) either Defendant (or an agent acting on behalf of Defendant) placed a telemarketing call (3) from four years prior to the filing date of this Complaint through trial (4) using an identical or substantially similar pre-recorded message used to place the telephone call to Plaintiff.

*Id.* at ¶ 48.

## II.   LEGAL STANDARD

Rule 12(f) provides that the court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," either on its own or on motion made by a party before responding to the pleading, such as the Complaint, as here. FED. R. CIV. P. 12(f), (f)(2). "[C]ourts in this District have held that the defendant must demonstrate from the face of the plaintiffs' complaint that it will be *impossible* to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove." *Francis v. Mead Johnson & Co.*, No. 10-cv-00701-JLK, 2010 U.S. Dist. LEXIS 105887, 2010 WL 3733023, at *1 (D. Colo. Sept. 16, 2010) (emphasis in original)).

## III.   ARGUMENT

*A.   The Motion is Procedurally Improper*

As an initial matter, the Defendant's motion is procedurally improper, justifying its denial. The instant motion is a motion to strike, brought under Rule 12(f). However, Defendant first brought a motion to dismiss under Rule 12(b)(6), and did not include the instant motion to strike in it. (ECF No. 15). In fact, Defendant brought the instant motion only *later*. (ECF No. 16). As such, the instant motion to strike is untimely because it falls afoul of Federal Rule of Civil

3

Procedure 12(g)(2), which provides that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." *See AK Steel Corp. v. PAC Operating Ltd. P'ship*, No. 15-9260-CM, 2018 WL 4184928, at *3 (D. Kan. Aug. 31, 2018) The purpose of the Rule is "to prevent [ ] dilatory motion practice ... a course of conduct that was pursued often for the sole purpose of delay." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1384 (3d ed. 2022). As the Ninth Circuit has noted, the purpose of Rule 12(g) is "simple and basic: a series of motions should not be permitted because that results in delay and encourages dilatory tactics." *Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1475 n.2 (9th Cir. 1988).

As another court explained in procedurally denying a *nearly identical motion* brought by the *same law firm* for the Defendant here under the same circumstances, having filed the motion after filing a motion to dismiss:

> A motion to strike is "a motion under" Rule 12; specifically, a motion to strike is one made under Rule 12(f). *See* Fed. R. Civ. P. 12(f); *see also* Wright & Miller, *supra* at § 1388 ("Motions to strike ... are motions under Rule 12 and thus clearly are within the language of subdivision (g)."). Because Carguard filed a separate motion to strike *after* it already filed a motion to dismiss pursuant to Rule 12(b)(6), it has failed to comply with Rule 12(g)'s mandate to consolidate all motions "available to [it]" into a single motion.

*Baccari v. Carguard Admin., Inc.*, No. 22-CV-1952, 2022 WL 3213839, at *2 (E.D. Pa. Aug. 8, 2022). This Court should do likewise, and deny the motion as procedurally improper.

B.   *Striking Class Allegations without Discovery is Premature*

"[M]otions to strike class allegations before discovery commences. . . are generally disfavored." *Cleary v. Whole Foods Mkt. Rocky Mountain/ southwest L.P.*, No. 15-cv-01247-MEH, 2016 WL 7048899, at *2 (D. Colo. Dec. 5, 2015). "In most circumstances,  it is appropriate for courts to allow discovery before determining whether class certification is

4

appropriate." *Id.* (quoting *Wornicki v. Brokerpriceopinion.com, Inc.*, No. 13-cv-03258-PAB-KMT, 2015 U.S. Dist. LEXIS 36985, 2015 WL 1403814, at *4 (D. Colo. Mar. 23, 2015)).

Significantly, because "the TCPA is 'a consumer protection statute which is remedial in nature,' this Court must interpret the statute broadly" and certainly not allow it to be turned on its head and weaponized against consumers." *Heard v. Nationstar Mortg. LLC*, No. 16-cv-00694-MHH, 2018 WL 4028116, at *5 (N.D. Ala. Aug. 23, 2018).

Defendant claims the class pled here should be struck because it is allegedly overly broad. It's not. A class is sufficiently ascertained if "[m]embership … can be determined without reaching any legal conclusions to determine whether someone is in the class, one simply needs to answer questions … determined by objective criteria." *Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112, at *8 (N.D. Cal. June 15, 2015) (internal annotations omitted). Contrary to what Defendant argues, to determine class membership in this case the Court will ask the following series of objective, factual questions:

- Did Alleviate Tax make pre-recorded calls?
- Were those numbers "cellular"?
- Does Defendant claim to have obtained consent to call them in the same manner Defendant claims to have obtained consent to call Plaintiff?
- Did the Defendant use the same or similar pre-recorded messages in its calling?

*See id.* at *8-9 (finding that the plaintiff's proposed Class were not fail safe because "one simply needs to answer questions such as whether the person received a certain number of phone calls from Defendant within a certain timeframe").

Alleviate Tax claims that the issue of whether or not it had consent to contact people will create mini-trials, allegedly rendering it overbroad. But, "[c]ourts should exercise caution when striking class action allegations based solely on the pleadings, because class determination

5

generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-CV-846, 2014 U.S. Dist. LEXIS 63122, 2014 WL 1814076, at *2 (S.D. Ohio May 7, 2014) (ultimately finding plaintiff in a TCPA case improperly pled a fail-safe class, but granting plaintiff leave to amend its pleadings to remove reference to consent, which is not included here).

Finally, this Court should not hold as a matter of law that a TCPA class is not ascertainable, unlike the other cases cited by Defendant including clearly individualized inquires as to what plaintiffs were injured. Indeed, identifying injured class members in a TCPA case is simply a matter of expert work, as other Courts have found when certifying a TCPA case. *See, e.g.*, *Johnson v. Comodo Grp., Inc.,* No. 16-4469 (SDW) (LDW), 2020 U.S. Dist. LEXIS 18033, at *25-27 (D.N.J. Jan. 31, 2020).

In rejecting a similar argument previously in a TCPA case, Judge Domenico rejected a similar motion to strike class allegations filed by the same counsel for the Defendant last month in *Hudson v. Homeadvisor, Inc.,* 2025 U.S. Dist. LEXIS 49539 (D. CO. March 14, 2025):

> Defendant has not shown that class certification is impossible here. At most, Defendant has shown that the proposed class definition is overbroad. And while I agree that Plaintiff's current class definition may not satisfy Rule 23's commonality requirement to the extent it includes people who gave consent to be contacted by Defendant, that is an issue that is more appropriate for resolution at the certification stage than on the pleadings. That is especially so given that the private right of action here "offers many advantages for class-wide adjudication," and any issues with the current class definition can likely be cured at a later time. *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 655 (4th Cir. 2019) (noting that a plaintiff suing under the TCPA "is likely to be in the same position as a great many other people and can rely largely on common proof to make out his claim"). *The motion to strike is therefore denied.*

The Court should find the same here.

6

C.  *The Plaintiff's class claims must not be struck because the Plaintiff does not plead an overly broad class.*

As to the issues of consent, it is true that some courts have previously struck class allegations in TCPA cases where, unlike here, the lack of consent was pled as part of the class definition. It is also true that consent under the TCPA at the time of the alleged calls could have been tendered to a third party. However, it is important to note that the cases cited by the Defendant all had class allegations struck at the pleadings stage for precisely that reason that it *included* language on consent that the Defendant argues the Plaintiff should have included here: the class definitions in each of those cases included some variation of the language that required each class member have not provided their consent.

Alleviate Tax's argument focuses on a potential *affirmative defense* of consent (of which they've produced no evidence to support) to assert that the action in its entirety is incapable of being maintained as a class action at the pleadings stage. In rejecting the same argument previously in a TCPA case, another Court held:

> The Court finds that the defendant's motion to strike the class allegations is premature before plaintiff can develop the factual record through discovery. Loan Depot's citation of consent as a potential affirmative defense is insufficient to warrant striking the putative class solely on the pleadings. The motion to strike class allegations will, therefore, be denied.

*Rosenberg v. LoanDepot.com LLC,* 435 F. Supp. 3d 308, 318 (D. Mass. 2020).

Even though Mr. Scofield does not believe that Alleviate Tax obtained the appropriate prior express written consent for its calls, not least of which because the calls were designed to solicit new business, the Plaintiff made a conscious decision to not include language about individuals who have not provided their "prior express written consent" in the class definition, as other federal courts *have found that* to be an impermissible fail-safe class in TCPA cases. In *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 WL 1814076, at *8-9 (S.D. Ohio May 7, 2014), a

7

court held that a TCPA plaintiff needed to amend his class definition because he included the language Defendant seems to want Plaintiff to include in a TCPA proposed class definition:

> Each of the Plaintiff's proposed classes is defined to include only those individuals who did not expressly consent to the receipt of the defendant's phone calls made with the use of an ATDS. Because the TCPA prohibits calls to cellular telephones using ATDSs unless prior express consent has been given, defining the class to include anyone who received such a call without prior express consent means that only those potential members who would prevail on this liability issue would be members of the class…However, if the Plaintiffs are unsuccessful in meeting their burden of proof, the class does not exist and the class is not bound by the judgment in favor of the Defendant. This is the definition of a prohibited fail-safe class.

Other courts agree. *See e.g. Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536 (E.D. Mich. 2015). Here, the Plaintiff avoided that potentially fatal flaw in drafting.

Nor does the determination of the consent issue necessitate thousands of individual mini-trials as the Defendant claims. Courts do not see consent issues as problematic from a class certification perspective, particularly when there are uniform issues with the offered consent evidence. *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 972 (N.D. Cal. 2019), *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012), *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 504 (S.D.N.Y. 2014). The *Brown, TD Bank,* and *Warnick* cases cited by the Defendant on this point are thus distinguishable. *Brown*, just as as in *Sauter*, impermissibly pled consent as part of the class definition. In *TD Bank*, the case revolved around issues of what individuals may have called to *revoke* consent and whether or not each consumer's method of revocation was "reasonable." *Martinez v. TD Bank USA, N.A.*, No. CV 15-7712(JBS/AMD), 2017 WL 2829601, at *5 (D.N.J. June 30, 2017). In *TD Bank*, the plaintiff also happened to adopt a flawed class definition predicated on whether the defendant had the plaintiff's "prior express consent." *Id.* at *12.

8

Similarly, in *Warnick v. Dish Network LLC*, 301 F.R.D. 551, 557 (D. Colo. 2014), this court held that a proposed class was unascertainable based on a twice-revised class definition that had started out pleading a revocation of consent and ended with an internal list of anomalies called a "TCPA Tracker." In sum, the issues of consent in this case, if there are any, will be easily ascertained and resolved long before class certification. In any event, given that no consent defense has been put forth, let alone any evidence to analyze whether such problems exist, it would be premature to strike the class allegations at the pleadings stage on this basis.

Relatedly, the class definition is not overly broad because the Plaintiff will deal with the consent issue through an analysis of the *Defendant's very own records*. Mr. Scofield seeks to represent a class defined in part by information readily available in Defendant's internal records: whether or not they received a call from the Defendant and whether or not they provided their number to the Defendant beforehand. Provided that Defendant has records of whom it sent messages, and a record of whether or not they simply cold-called that person or instead had written permission, they will not have to take a putative class member's say-so that he received a call or that he didn't consent. Thus, the class is not overly broad but rather will be accurately ascertained and notified long before the jury returns a verdict.

D.  *The TCPA's Statute of Limitations is Four Years, which is why the Plaintiff's Class is Limited to Calls Four Years Prior to the Date of Filing Forward.*

The Plaintiff does not dispute the Defendant's contention that the statute of limitations for the TCPA is four years, which is why the Plaintiff limited calls to four years before the filing of the complaint. However, as the Plaintiff also alleges, Alleviate Tax's calling conduct continues, and so his class definition is drafted accordingly. It is well-settled that the filling of a class action tolls the statute of limitations as of the date of filing, even if no class is yet certified.

9

*American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554 (1974) ("[C]ommencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." "Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied." *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 354 (1983). *American Pipe* tolling is "a rule based on traditional equitable powers, designed to modify a statutory time bar where its rigid application would create injustice." *California Public Employees' Retirement System v. ANZ Securities, Inc.*, 582 U.S. 497, 510 (2017). Meanwhile, the purposes of statutes of limitations are "to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights." *Crown, Cork & Seal*, 462 U.S. at 352. *American Pipe* tolling begins upon the filing of a putative class action complaint, which "commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *American Pipe*, 414 U.S. at 555. Alerted by the complaint, a class-action defendant has "the essential information necessary to determine both the subject matter and size of the prospective litigation," *id.*, and to become "aware of the need to preserve evidence and witnesses respecting the claims of all the members of the class," *Crown, Cork & Seal*, 462 U.S. at 353. Consequently, for purposes of *American Pipe* tolling, "the claimed members of the class [stand] as parties to the suit until and unless" they opt out or class certification is denied. *American Pipe*, 414 U.S. at 551. If Alleviate Tax continues to make robocalls, it will continue to potentially face liability through this class action under the aforementioned doctrines, and so the class is not overbroad merely because trial will occur some time in the future.

10

E.  *The Plaintiff's Robocall Class is not Vague*

The Plaintiff's Robocall class definition seeks to represent, "All persons within the United States [who received one or more calls on their protected number] (4) using an identical or substantially similar pre-recorded message used to place the telephone call to Plaintiff." There is nothing vague or confusing about that "identical or substantially similar" phrase to encourage the extreme remedy of striking the class allegations prior to any discovery. Indeed, the Plaintiff posits that the Defendant's argument would have not even been made if he had only used the word "identical." However, where would that distinction end? What if the Defendants used a different voice actor to send a message on a different day? What if they used the same voice actor but had different words in the message? The possibilities are endless, but by the same token the Plaintiff did not want to allege that any recorded message of any type for any reason would be subject to discovery and his class definition, for that would likely garner similar objection. As such, he used the phrase he did.

In the non-TCPA context, other courts have refused to strike class allegations using similar language. *See, e.g., Lizama v. Venus Labs., Inc.*, 679 F. Supp. 3d 848, 858 (E.D. Mo. 2023) ("The 'overarching question' for standing is whether the named plaintiff's injury is *substantially similar* to 'the claims of those [he] seeks to represent.' (quoting *Browning v. Anheuser-Busch, LLC*, 539 F. Supp. 3d 965, 977 (W.D. Mo. 2021)) (emphasis added). Indeed, "[t]he TCPA prohibits persons from (1) making 'any call,' (2) 'using . . . an artificial or prerecorded voice,' (3) 'to any telephone number assigned to a . . . cellular telephone service. . . .'" *Grant v. Capital Mgmt. Servs., L.P.*, 449 F. App'x 598, 600 (9th Cir. 2011) (cleaned up). As such, despite the fact that the Plaintiff would have commonality with all calls made "using an artificial or prerecorded voice," he still limited his class, prior to any discovery, to calls that

11

presumably had the same factual predicate for being sent, as he only intends to pursue similar types of pre-recorded calls, e.g., sales calls. That provides no basis to strike the claims here.

F.      *Resolution of the Class Certification Motion Will Not Require a Merits Finding*.

Defendant's claim that the class here should be struck merely because it makes reference to "telemarketing" fares no better. As noted in the preceding pages, the Plaintiff is asserting a Subsection 227(b) claim for *any* call made to a protected number using an "artificial or prerecorded voice." The definition of "telemarketing" contained in 47 C.F.R. § 64.1200(f)(13) does not apply to such calls; the statute plainly prohibits the making of *any* call, regardless of whether it is telemarketing or not, using an "artificial or prerecorded voice." 47 U.S.C. §227(b)(1)(A)(iii). As Defendant correctly observes, determining whether a call is telemarketing or not is *irrelevant* to the merits of the Plaintiff's, and class's, claims here, and as such, is irrelevant to a merits-based determination of class claims. *Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258, at *6 (E.D. Pa. July 15, 2021) (rejecting claim that noncommercial survey calls were exempt and holding that "[T]he operative language of the TCPA is unambiguous. Section 227(b)(1)(A) prohibits placing artificial and prerecorded voice calls to a variety of telephone numbers."). To hold otherwise would read the words "any person" and "any call" out of the statute. *See id.* To that end, to the extent that the definition proposed here is read to require some sort of impermissible merits-based determination, the proper remedy lies in amending or altering the class definition, not taking the drastic remedy of striking the class claims entirely.

G.  *For nearly identical reasons, there exist common questions of law or fact applicable to the class.*

Nor do any of the issues raised by the Defendant defeat commonality as the Defendant claims. Courts *routinely* certify TCPA prerecorded call class actions of this sort, including class actions where there are disputed issues of consent. The commonality requirement dictates that the case have "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The bar for demonstrating commonality is low and does not require that all class members have perfect identify of questions of law or fact. Indeed, "even a single common question will do." *Wal-Mart*, 564 U.S. at 359. The Plaintiff must only demonstrate that there is a common question central to the validity of the class's claims, the "truth or falsity" of the common answers to them will resolve the claims "in one stroke." *Id.* at 350. For the reasons below, this case will satisfy this requirement.

As alluded to above, although consent *might* become an issue in this class action, such contentions do not require an individualized inquiry. The fact of consent, together with its legal effectiveness, are issues capable of classwide resolution since consent under the TCPA must meet certain requirements. For starters, if the legal requirements for consent are not satisfied, for example by using legally insufficient language on a website used to obtain consent, every class member would not have provided legally sufficient consent and consent becomes a nonissue. Similarly, the alleged vagueness and other perceived infirmaries regarding the class definition simply do not exist. For these reasons, it is no surprise that Courts have *certified* prerecorded call classes owing to uniform issues with the proffered consent evidence capable of classwide resolution. *Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376, 385 (D. Mass. 2024); *Aley v. Lightfire Partners, LLC*, No. 5:22-CV-00330 (AMN/TWD), 2024 WL 4007345, at *3 (N.D.N.Y. Aug. 30, 2024) (certifying class on common legal issues of consent); *Berman v. Freedom Fin.*

13

*Network, LLC*, 400 F. Supp. 3d 964, 972 (N.D. Cal. 2019); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012).

However, because all the telephone calls here are alleged to have originated from the same place, the success and legal sufficiency of the affirmative defense of consent is necessarily a common question with common answers. TCPA cases are routinely certified as common, even when there is evidence of consent, because such cases involve a singular legal question based on a singular set of records, as here. *See, e.g.*, *Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 3:12 CV 2257, 2014 WL 6750690, at \*5 (N.D. Ohio Dec. 1, 2014) (discussing remarkable commonality of TCPA cases). Indeed, as described above, the Defendant's own internal books and records will be used by the Court or jury to craft a uniform, objective answer to a common question: did any class member provide their telephone number to the Defendant, as reflected in the Defendant's own records? If yes, they are out of the class; if no, they are in the class.

Nor do the other non-issues identified by the Defendant render this matter at all impermissibly uncommon. As explained above, its unclear how the tolling of the statute of limitations impacts the commonality of class members: each claim is either timely, or it isn't because it's time-barred. Similarly, as explained above, given that similarity and telemarketing are not recognized as validity requirements to the claims the Plaintiff brings here, they cannot factor into the "validity of the class's claims" under a commonality analysis. *Wal-Mart*, 564 U.S. at 350

### IV.    CONCLUSION

This Court must deny Defendant's motion to strike in its entirety. Alternatively, to the extent that the Court finds that additional questions remain, it should permit the Plaintiff to

14

amend the class definition to correct the deficiencies or properly preserve such issues for class certification.

RESPECTFULLY SUBMITTED AND DATED this April 26, 2025.

/s/ *Anthony I. Paronich*
Anthony I. Paronich,
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510
Email: anthony@paronichlaw.com
    *Pro Hac Vice*

    *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2025, I electronically sent the foregoing to counsel of record for the Defendant through the Court's CM/ECF System.

/s/ *Anthony I. Paronich*
Anthony I. Paronich, *Admitted Pro Hac Vice*