UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

**SHANE SCOFIELD,**                                           Case No. 1:24-CV-3231

      Plaintiff,
v.

**Alleviate TAX LLC,**

      Defendant.
_____/

**Plaintiff's Response in Opposition To Defendant's Motion To Dismiss**

## I. INTRODUCTION

Defendant Alleviate Tax LLC's ("Alleviate" or "Defendant") motion to dismiss must be denied because the Plaintiff has pled sufficient facts to demonstrate Alleviate's direct liability for the prerecorded call at issue. Specifically, Plaintiff has pled that he received a prerecorded call that left a voicemail about tax relief services and directing him to call a telephone number. When Plaintiff called that number back, as directed in the message, he was connected to an Alleviate employee and pitched Alleviate's tax relief services, the same services promoted on the prerecorded call. There can be no clearer connection here. Such facts are sufficient to give rise to the inference that Alleviate directly sent the calls complained in the complaint.

As so many other courts have done in other TCPA cases involving direct liability and highly-illegal prerecorded calls to cell phones on the Do Not Call Registry, this case must be allowed to proceed.

## II. FACTUAL BACKGROUND

Plaintiff alleges as follows: Plaintiff's telephone number (the "Number"), (970)-XXX-XXXX, is a cellular telephone number on the National Do Not Call Registry. *See* ECF No. 1 at ¶ 17. The Plaintiff never consented to receive telemarketing calls from the Defendant. *Id.* at ¶ 20. The Plaintiff never did any business with the Defendant prior to the calls at issue. *Id.* at ¶ 21. Despite that, on February 15, 2024 the Plaintiff got a pre-recorded call that stated:

> This is an important update from the Tax Relief Centre. According to our records, you may still have an existing state or federal tax balance that needs to be addressed. The new 2024 Advantage Tax Relief Fund is now available to small businesses like yourself. The Advantage Tax Relief Program is designed to reduce your tax debt by up to 100 percent, and it simply requires a brief five-to-ten-minute phone consultation. There is no personal information required, but the funding for this program is only expected to be available through the end of this month. It is imperative that you call today to secure your position and determine your eligibility. Call us back now at 888-355-2972 and ask to speak with one of our certified tax relief specialists. Again, that number is 888-355-2972.

1

*Id.* at ¶ 22-23. Indeed, the app RoboKiller identified other users who received the same exact pre-recorded message from the same exact phone number at the time. *(706) 998-5526 – RoboKiller Lookup*, ROBOKILLER. *Id. at ¶ 25.* Plaintiff called the 888-355-2972 number he was provided on the message to identify the identity of the caller who was calling him illegally and for no other reason. *Id.* at ¶ 26. When the Plaintiff called the number, a male answered the line and asked if the Plaintiff was interested in tax assistance services, the same type of services in the prerecorded messages, and that this individual eventually identified his company as Alleviate Tax. *Id.* at ¶ 27. Despite these well-pled facts, the Defendant claims that the Plaintiff has not plausibly alleged that Alleviate made the call at issue. This response follows.

### III.    LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

## IV.   ARGUMENT

A.   *Plaintiff adequately pleads direct liability for the call because he pleads facts which permit a reasonable inference that Defendant Alleviate placed it.*

The allegations in the Plaintiff's complaint bear repeating here and well establish that the Plaintiff has adequately pled a theory of direct liability for the pre-recorded call he received as originating from Alleviate. As alleged in the Complaint, the Plaintiff received a generic prerecorded call, which did not identify the caller by name, on February 15, 2024. (Compl. ¶ 22–23). That pre-recorded message urged the Plaintiff to "call us back" at "888-355-2972 and ask to speak with one of our certified tax relief specialists." (Compl. ¶ 23). Other individuals got nearly identical messages around that same time. (Compl. ¶ 25). Pursuant to the caller's instructions, the Plaintiff called the 888-355-2972 number back. The Plaintiff was connected to a certified tax relief specialist, who attempted to sell the Plaintiff the Defendant Alleviate's tax resolution services, and eventually confirmed that he was with Defendant Alleviate. (Compl. ¶ 27).

Despite these clear, well pled facts, which must be accepted as true for Motion to Dismiss purposes here, the Defendant makes a shocking allegation: it had nothing to do with the calls and the Plaintiff has failed to prove direct liability or even vicarious liability as to Defendant Alleviate. But nothing about the Plaintiff's pleading can even begin to introduce doubt into his allegation, supported by the aforementioned evidence, that Alleviate (or at the very least someone it authorized and hired) placed the call, not the least of which because it would be illogical for someone to leave a prerecorded voicemail telling a person to "call us back" and then get connected to a different person entirely. Plaintiff called the number back, exactly as instructed, was connected to an Alleviate employee, but despite this, Alleviate claims to have nothing to do with the call. That allegation runs contrary to common sense. Based on those

3

allegations, it is eminently logical that the subject prerecorded call was placed by the Defendant, because people don't leave messages gratuitously directing business to some third party.

It belies logic and common sense to argue that Alleviate did not place the call they are alleged to have placed in the Complaint, when the only individual with whom Plaintiff spoke directly as a result of the call, at Alleviate's direction, identified himself as an Alleviate employee. Nevertheless, the contention that someone else other than Alleviate would have placed the call, only to connect the call to Alleviate's employee, and only Alleviate's employee, is a "red herring" that begs the question "who did, then?" *See Consol. Grain & Barge, Inc. v. Anny*, No. CIV.A. 11-2204, 2013 WL 486687, at *6 (E.D. La. Feb. 6, 2013). Plaintiff has met his burden of pleading facts sufficient to give rise to the inference that the Defendant directly placed the calls at issue, including based on the attached evidence. The Court's analysis can end there.

For all its sabre-rattling about pleading physical initiation of a call under the TCPA and general industry practices, the relevant case law also makes clear that a person need not physically initiate or dial a call in order to be directly liable for the call; indeed, a caller can initiate the call through another if they "take the steps necessary to physically place a telephone call." *In re Dish Network*, 28 F.C.C. Rcd. 6574, 6583 (2013). An employee placing a call for a company's behalf, together with several other even more remote types of conduct, including securing a telephone connection, providing reports, and contracting for call center services, are all actions which are sufficient to "initiate" a call and impose direct liability. *In re Dialing Servs., LLC*, 29 F.C.C. Rcd. 5537 (2014) (citing *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 377 (4th Cir. 2013) and *Lucas v. Telemarketer Calling From (407) 476-5670 & Other Tel. Numbers*, No. 1:12-CV-630, 2014 WL 1119594, at *10 (S.D. Ohio Mar. 20, 2014) for the proposition that "in evaluating the TCPA liability of third parties who engage robocalling

services, courts have assumed liability of the latter for any illegal calls made using the service, explaining that 'the language of the Act indicates that it is intended to apply to the individuals who use the autodialing systems that place calls, and not just to the autodialing services themselves.'").

As in so many other cases, this Court can more than plausibly infer that the Defendant is directly liable for the calling conduct described in the complaint, as other courts have done with far less problematic boilerplate motions. *See, e.g.*, *Smith v. Am.-Amicable Life Ins. Co. of Texas*, No. CV 22-333, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022) (holding sufficient allegations that during the calls the plaintiff was told that he was "speaking with American-Amicable" and allegations that the calls "concerned insurance benefits–American-Amicable's area of business"); *Martin v. Bottom Line Concepts, LLC*, 723 F. Supp. 3d 270, 280 (S.D.N.Y. 2024) (holding plaintiff adequately pled direct liability when the plaintiff received calls identifying the defendant); *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014); *Abramson v. Josco Energy USA, LLC*, No. 2:21-cv-1322, 2022 U.S. Dist. LEXIS 237792, at *6 (W.D. Pa. Aug. 1, 2022) ("Defendant might dispute those facts, but as now alleged, they go beyond formulaically reciting the elements of Plaintiff's cause of action, and the Court must take them as true at this early stage in the litigation."); *Dudley v. Vision Solar, LLC*, No. 21-659, 2021 WL 3077557, at *4 (D.N.J. July 21, 2021); *Atkinson v. Choice Home Warranty*, No. CV 22-04464, 2023 WL 166168, at *3 (D.N.J. Jan. 11, 2023).

It is particularly shocking that the Defendant points to only two contrary authorities, both of which are distinguishable. In *Childress v. Liberty Mut. Ins. Co.*, the Plaintiff, as here, received a prerecorded message from a fictitiously named robot, "Jason," with "Cheap Insurance Experts," and was "transferred to an individual named 'Steve Ross' and indicated that he was

5

located at a call center in Dallas, Texas." No. 17-CV-1051 MV/KBM, 2018 WL 4684209, at *1 (D.N.M. Sept. 28, 2018). Unlike here, however, and strangely, the Plaintiff then made the allegation that Mr. Ross was a "live person telemarketer employed by Defendant [Liberty Mutual Insurance Company]" without citing to any evidence to why this was the case, not even a statement made by Mr. Ross. *Id.* at *3 ("[T]here are no factual allegations that Defendant actually made the telephone call at issue."). Unlike in that case, the Plaintiff pleads to manifestly distinct allegations showing that the Defendant here placed the calls at issue, by speaking with the Defendant's employee, who was the *only person with whom he spoke*, and where Alleviate was the *only company mentioned* on the call back telephone call. And in *Thomas v. Taco Bell Corp.*, at *summary judgment*, the court held as insufficient evidence that Taco Bell controlled a franchisee's calling campaign so as to hold Taco Bell liable for the franchisee's conduct. *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012) ("Direct liability is inapplicable here as the parties do not dispute that the actual sender of the text was Ipsh, a separate provider of text-message based services retained by [Franchisee]."). That is manifestly different from the direct liability because of direct identification theory advanced here.

To that end, this case is like the other cases Defendant cites, where the plaintiffs *were* held to have alleged direct liability, including through direct identification of the relevant parties, as in *Cunningham*, *Forteza*, and *Williamson.* Indeed, to this regard, one of the cases *cited by the Defendant*, *Martin v. Bottom Line Concepts, LLC*, pleads *nearly identical facts to those here*. There, as here, one of the calls came from a number that, *when called back*, played "a prerecorded message" identifying the Defendant's *alias*. 723 F. Supp. 3d 270, 275, 282–83 (S.D.N.Y. 2024). The Court flatly concluded that the contention that the defendant did not place the calls, despite its alias being used on the callback number, was illogical: "BLC is wrong. The

6

FAC alleges that 'BLC directly initiated' the call at issue and pleads 'factual content [that] allows the court to draw the reasonable inference that [BLC] is liable for the misconduct alleged.'" *Id.* (cleaned up). Helpfully, the court identified several facts and inferences which allowed it to draw that conclusion, including that the defendant owned and controlled the callback phone number, that the defendant was the beneficiary of the message conveyed via the robocall, and that Bottom Line Capital was a pseudonym of the defendant to avoid ill will for the defendant's brand. *Id*. Those facts mirror almost identically the allegations in the Complaint.

Nor does the law require that a caller provide the same caller ID as a callback number on the call to identify the caller as the defendant, and the law requires callers to identify themselves, but predictably, most, as here, illegally do not, since such identification causes ill will for their brands. Moreover, the use of a local caller ID but a toll free callback number is entirely consistent with a nationwide calling campaign run by Defendant, since most consumers nowadays have been trained to avoid answering calls from unfamiliar, blocked, or toll free telephone numbers. Plaintiff did *exactly* what the Defendant told the Plaintiff to do in the message it sent and call a particular number. Defendant cannot now cry foul, having its hand caught in the cookie jar, based on its own representations when Plaintiff called the number.

In essence, the Defendant attempts the classic "we didn't do it" defense by disguising it as a challenge to the Plaintiff's allegations of direct liability at the pleadings stage. Rule 12(b)(6) is not an appropriate device for testing the truth of what is asserted in the complaint or for determining whether the plaintiff has any evidence to back up what is in the complaint. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002). However, that's precisely what the Defendant attempts to do here, making a red-herring argument that the Plaintiff has failed to state a claim because he has allegedly failed to set forth facts giving rise to direct liability that the

7

Defendant placed the call at issue. The Defendant's "we didn't do it" argument is more properly the subject of a jury trial or at the very least a motion for summary judgment. These details surrounding the call at issue is more than sufficient to put Defendant on notice of the claim being asserted and that they are alleged to have made telemarketing calls directly to Plaintiff.

Closing with a short review of other cases in which plaintiffs were held to made adequate allegations of direct liability should be more than adequate to convince this Court that the Plaintiff has made a sufficient showing at the pleadings stage that the Defendant directly placed the calls at issue. This Court should reach the same conclusions as the Eastern District of Pennsylvania with respect to a similar motion in holding sufficient far less specific allegations that during the calls the plaintiff was told that he was "speaking with American-Amicable" and allegations that the calls "concerned insurance benefits–American-Amicable's area of business." *Smith v. Am.-Amicable Life Ins. Co. of Texas*, No. CV 22-333, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022). So too here, where the Plaintiff called the number back, and spoke with a tax specialist who confirmed he was with the Defendant, and such call is entirely consistent with the stated purpose of the prerecorded call, for tax relief services.

The Defendant's standard provides a perverse incentive for a caller to conceal their identity by making it impossible for any plaintiff to prove a claim against the defendant at the pleadings stage based on a lack of information and evidence. Luckily for consumers who receive unwanted calls, this is not the standard. *Abramson v. Josco Energy USA, LLC*, No. 2:21-cv-1322, 2022 U.S. Dist. LEXIS 237792, at *6 (W.D. Pa. Aug. 1, 2022) ("Defendant might dispute those facts, but as now alleged, they go beyond formulaically reciting the elements of Plaintiff's cause of action, and the Court must take them as true at this early stage in the litigation.").

There is no inquiry without a starting point, and the starting points must be accepted as

8

known in some sense, even if they are not known in the strictest sense. To attempt to doubt these starting points at the outset would prevent any inquiry from proceeding. Should this Court at all find the Plaintiff's pleading at all deficient, the Court only need give the order granting the Plaintiff leave to amend and he will do so to rectify any perceived deficiency.

## V.    CONCLUSION

This Court must deny Defendant's motion to dismiss in its entirety. Alternatively, to the extent that the Court finds that additional questions remain, it should permit the Plaintiff to amend to correct the deficiencies or permit discovery as to direct liability, as necessary.

RESPECTFULLY SUBMITTED AND DATED this April 28, 2025.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*Attorney for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I, Andrew Roman Perrong, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

DATED this April 28, 2025.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.